The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
Because the transcript tapes of the hearing testimony were unavailable, Deputy Commissioner Chapman's notes were stipulated to by the parties, along with the deposition testimony, and have become a part of the official record.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. U.S. Fire Insurance Company was the carrier on the risk.
In addition, the parties stipulated into evidence a Form 18 dated August 30, 1990. Defendants were allowed 30 days to submit a Form 22 wage chart but failed to do so.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff began working for defendant hospital on July 11, 1988, as a nurse's aide. Her job duties included providing patient care, including taking vital signs and feeding, bathing, dressing, turning and positioning the patients. Only the total care patients required all of these services, however. The number of these activities she had to perform varied depending upon which area and shift she worked. She worked in different areas of the hospital.
2. Several of plaintiff's tasks required repetitive hand movements. Turning and positioning patients required her to grip, pull and lift on a draw sheet. Checking blood pressure required pumping a bulb to the required pressure. When she bathed a patient, besides the movements involved in the bathing process, she would repeatedly wring out or squeeze the wash cloth. In addition, making beds for bedridden patients required much hand movement.
3. In late September 1988 plaintiff noticed a tingling sensation in her hand. She was concerned about working in the nursery, so she decided to go to Dr. Faulkenberry, her family doctor. He treated her with medication and wrist splints and ordered nerve conduction tests. The studies were consistent with carpal tunnel syndrome so he referred her to Dr. Rush, an orthopedic surgeon. Dr. Rush diagnosed her condition as bilateral carpal tunnel syndrome and recommended surgery since she had not responded to conservative treatment.
4. Plaintiff underwent a bilateral carpal tunnel release on November 23, 1988 by Dr. Rush. He followed her recovery thereafter and released her to return to work in December, but on January 3, 1989 he restricted her activities to the extent they involved heavy lifting, grasping or repetitive motions. Plaintiff returned to work on December 24, 1988. Although she wore her splints at work, she continued to have problems and decided that the job was too strenuous, so she asked to be given a secretarial position. Defendant-employer would not offer her such a position and in approximately April 1989 terminated her employment on the grounds that she could not properly perform her work duties as a nurse's aide.
5. By June 1989 plaintiff was also having symptoms of bilateral thumb pain, and she returned to Dr. Rush. He diagnosed this condition as bilateral tendonitis of the flexor tendons, and he gave her injections and splints. Following some initial improvement, she continued to experience much difficulty with her hands and wrists and had locking of her thumbs. Dr. Rush subsequently recommended surgery for the "trigger thumbs". Plaintiff elected to not undergo the surgery. Since she had lost her health insurance by that time, it is not clear whether the decision was based upon economic concerns or her desire to avoid the operation. As of the date of hearing, she continued to experience significant problems, especially with her thumbs.
6. As a result of the repetitive hand movements which plaintiff performed in the course of her employment with defendant-employer, she was placed at an increased risk of developing carpal tunnel syndrome and tendonitis as compared to the general public not so employed. Her bilateral carpal tunnel syndrome and flexor tendon tendonitis were a proximate result of the repetitive hand activities she performed during her employment with defendant-employer.
7. Plaintiff developed bilateral carpal tunnel syndrome and flexor tendon tendonitis, occupational diseases which were due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which were not ordinary diseases of life to which the general public was equally exposed.
8. As a result of these occupational diseases, plaintiff was unable to work from November 23 through December 23, 1988 and from the date after she was terminated through February 25, 1991 when Dr. Rush last saw her. No finding is made regarding her disability thereafter. Additional evidence will be necessary regarding whether she wants to undergo the surgery he has recommended and, if not, when she reached maximum medical improvement and what her limitations are, if any.
9. Plaintiff received unemployment benefits during the time she was temporarily totally disabled. However, the amount of these benefits was not submitted into evidence.
10. No finding is made regarding plaintiff's average weekly wage in that defendants did not submit a submit a Form 22 wage chart as directed.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff developed bilateral carpal tunnel syndrome and flexor tendon tendonitis, occupational diseases carpalases which were due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which were not ordinary diseases of life to which the general public was equally exposed. G.S. 97-53(13); Booker v. Duke Medical Center,297 N.C. 458 (1979).
2. Plaintiff is entitled to compensation for temporary total disability from November 23 through December 23, 1988 and from the date after she was terminated through February 25, 1991, subject to a credit for unemployment compensation paid to her during that time. G.S. 97-29; G.S. 97-42.1.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from these occupational diseases to the extent such treatment tends to lessen her disability or provide her with relief. G.S. 97-59.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability from November 23 through defendants shall pay compensation to December 23, 1988 and from the date after she was terminated through February 25, 1991, subject to a credit for unemployment compensation received by her during that time. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her occupational diseases when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. An attorney's fee in the amount of 25 percent of the compensation awarded is approved for plaintiff's counsel, which fee shall be deducted from the compensation and paid directly to Mr. Lindler.
4. Defendants shall pay the costs.
IT IS FURTHERMORE ORDERED:
1. Defendants shall have 30 days from the filing date of this opinion in which to submit a Form 22 wage chart which shall show earnings through November 22, 1988 and which shall show the last date of plaintiff's employment. Should the document not be submitted as ordered, plaintiff shall be presumed to have earned wages sufficient to generate the maximum compensation rate.
2. Plaintiff shall be re-examined by Dr. Rush at defendants' expense and she shall notify the Commission what her decision is regarding surgery, assuming that it is recommended. Additional evidence from Dr. Rush shall then be submitted by way of stipulated medical reports or deposition at defendants' expense regarding the remaining issues. The parties have 60 days in which to depose him but may request an extension of time should it be necessary.
3. This case shall be REMOVED from the Full Commission hearing docket.
This the __________ day of ______________________, 1994.
 S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________ W. JOEY BARNES DEPUTY COMMISSIONER
S/ ___________________ WILLIAM L. HAIGH DEPUTY COMMISSIONER
JHB/nwm 11/17/94